**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **MARTHA A. CASTELLON-VOGEL**<br>852 Miami Ridge<br>Loveland, Ohio 45140<br><br>Plaintiff,<br><br>v.<br><br>**INTERNATIONAL PAPER COMPANY,**<br>**A New York Corporation**<br>6400 Poplar Avenue<br>Memphis, Tennessee 38197<br><br>*Also Serve:*<br><br>**Statutory Agent:**<br>CT Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, Ohio 43219<br><br>Defendant. | Case No. ____________________<br><br>Judge ____________________<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Martha A. Castellon-Vogel ("Castellon-Vogel" or "Plaintiff") for her Complaint against her former employer, International Paper Company ("IP" or "Defendant"), states as follows.

**PARTIES**

1. At all material times, Plaintiff Martha A. Castellon-Vogel has been a resident of Hamilton County, Ohio and was employed by Defendant International Paper Company.

2. Defendant IP is a New York Corporation, conducting a world-wide business operation, including within Loveland, Hamilton County, Ohio, where Plaintiff Castellon-Vogel was employed.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case, and venue is proper within this judicial district, pursuant to 28 USC § 1331, 28 USC § 2201, 29 USC § 1132(a)(e) and (f), and 29 USC § 1391(c).

## FACTS

4. Plaintiff Castellon-Vogel was employed for 28 years as a full-time salaried employee by Defendant IP, most recently as a Senior Staff Engineer at IP's Loveland, Ohio Technology Center.

5. On June 30, 2017, Defendant IP eliminated Plaintiff Castellon-Vogel's job.

6. During Plaintiff's employment, IP established the International Paper Company Salaried Employee Severance Plan ("Plan") to provide a termination allowance for eligible employees.

7. The Plan is welfare plan governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

8. IP's elimination of Castellon-Vogel's job constituted a Termination Event which rendered her eligible for a termination allowance under the Plan.

9. In order for Plaintiff Castellon-Vogel to receive the termination allowance to which she was entitled under the Plan, IP required her to sign a Termination Agreement and Release ("Agreement") which it represented to be "a termination agreement acceptable to the Company." A copy of the Agreement is attached as Exhibit A.

10. The Agreement contained a General Release of Claims provision (Agreement ¶ 7) purportedly encompassing

> all claims under federal, state or local law, whether based on statute or common law, that relate to employment, *including but not limited to*, all federal, state, and local discrimination laws, claims, charges, and legal actions...[and] also includes a release and waiver of any claims for breach of express or implied contract, and claims, qui tam or anti-retaliation provisions under any federal, state or local statute or common law relating in any way to the employment relationship, and any right to any recovery of money or any other personal remedy. It applies both to claims that you know about and to claims you do not know about.

11. On July 12, 2017 Plaintiff Castellon-Vogel, through her counsel, advised IP that her eligibility for her termination allowance under the Plan could not be conditioned upon the above-described General Release of employment claims because *inter alia* Plaintiff was already entitled to such benefits under 29 USC § 1132(a)(1)(B), and because IP could not use its otherwise undifferentiated "termination agreement acceptable to the Company" eligibility qualification to arbitrarily impose a non-Plan and unauthorized General Release, without notice, and at IP's unfettered discretion as an additional condition to her entitlement to her termination allowance under IP's Plan. (See Exhibit B).

12. Under the Plan, Plaintiff Castellon-Vogel had 21 days until July 21, 2017 within which to sign the Agreement and return it to IP.

13. On July 21, 2017, Plaintiff Castellon-Vogel signed and returned the Agreement to IP and reiterated that she "reserves her right, including to bring causes of action against IP for wrongful termination and discrimination, as receipt of her Plan severance benefits does not provide IP with a general release of any such employment claims." (See Exhibit C).

14. Under the Plan, Plaintiff Castellon-Vogel had 7 days until July 28, 2017 to revoke her acceptance of her termination allowance.

15. Plaintiff Castellon-Vogel did not revoke her acceptance of her termination allowance.

16. Defendant IP disputes Plaintiff Castellon-Vogel's position that IP's Plan and its

Agreement do not and cannot impose an enforceable release of her employment-related claims against IP.

17. Defendant IP also asserts that, in the event Castellon-Vogel pursues legal remedies purportedly released by the Agreement, including "any right to any recovery of money or any other personal remedy," IP will oppose such efforts relying upon the Agreement, and will seek full recovery of its costs, attorney fees, and/or other sanctions against Plaintiff Castellon-Vogel for such efforts by her.

18. On August 14, 2017, IP confirmed that it had processed and would be paying Plaintiff Castellon-Vogel's salary termination allowance.

19. In its written confirmation to that effect, IP reiterated its position that the Agreement is a valid release of Plaintiff Castellon-Vogel's employment-related claims. (See Exhibit D).

20. On August 31, 2017, IP paid Plaintiff Castellon-Vogel's salary termination allowance under the Plan.

21. The Plan does not contain express language conditioning an eligible participant, like Plaintiff Castellon-Vogel's, receipt of his or her termination allowance benefits upon the signing of a general release of employment-related claims, as in the Agreement.

22. The Plan does not give notice to eligible beneficiaries, like Plaintiff Castellon-Vogel, that eligibility for his or her termination allowance is conditioned upon a general release of employment-related claims, as in the Agreement.

23. The Plan's eligibility requirement that eligible participants, like Plaintiff Castellon-Vogel, "sign a termination agreement acceptable to the Company," does not state or imply that Defendant IP can condition such a beneficiary's receipt of his or her termination allowance on the signing of a general release of employment-related claims, as in the Agreement.

**COUNT ONE**
**(Declaratory Judgment)**

24. Plaintiff Castellon-Vogel adopts and realleges paragraphs 1-23 above.

25. An actual case or controversy exists between Plaintiff Castellon-Vogel and Defendant IP concerning the validity, effectiveness, and enforceability of the provisions of the General Release of Claims in the Agreement.

26. Plaintiff Castellon-Vogel seeks a declaration that the General Release is null and void, unenforceable against her, and does not otherwise bar her from pursuing her rights against Defendant IP, including claims against it for wrongful termination and discrimination.

27. A declaratory judgment in Plaintiff Castellon-Vogel's favor would settle the controversy, clarify the legal relations between the parties, and serve as an effective remedy.

28. Pursuant to its authority under 28 USC § 2201, this Court should declare that the General Release of Claims in the Agreement is null and void, unenforceable against Plaintiff Castellon-Vogel, and does not otherwise bar her from pursuing her rights against Defendant IP, including claims against it for wrongful termination and discrimination.

WHEREFORE, Plaintiff Castellon-Vogel respectfully requests that the Court:

(1) Declare that the General Release of Claims in the Agreement is null and void, unenforceable against Plaintiff Castellon-Vogel, and does not otherwise bar her from pursuing her rights against Defendant IP, including claims against it for wrongful termination and discrimination;

(2) Award Plaintiff Castellon-Vogel, her costs, expenses, and reasonable attorney fees, plus applicable interest; and,

(3) Award Plaintiff Castellon-Vogel such other relief this Court deems just and proper.

*/s/ Kent W. Seifried*
Kent W. Seifried (#0007840)
Poston, Seifried & Schloemer
2039 Dixie Highway
Ft. Mitchell, KY 41011
Telephone: (513) 431-3200
Facsimile: (513) 655-7765
Email: kent@pss-law.net
*Attorney for Plaintiff, Martha A. Castellon-Vogel*

June 20, 2017

EXHIBIT A

Martha Castellon-Vogel
852 Miami Ridge Drive
Loveland, OH 45140

**RE: Termination Agreement and Release**

Dear Martha:

This Termination Agreement and Release (the "Agreement") constitutes an agreement between you and International Paper Company ("IP" or the "Company') on the terms of your separation from employment with us. To ease your transition and provided that you sign (and do not revoke) this Agreement as set out below, IP will provide a lump sum cash Termination Allowance and certain other benefits to you. We refer to the Termination Allowance and the other benefits collectively as the "Severance Benefits" throughout this Agreement. Exhibit 1 compares the benefits you receive if you sign the Agreement to those you receive if you choose not to sign the Agreement.

Once you have carefully read this Agreement, if you wish to receive the Termination Allowance, please indicate your acceptance by signing below.

| | |
|---|---|
| *1. Employment Separation Date* | Your last day of employment will be 6/30/2017 (the "Employment Separation Date") and you will be paid for work performed through that date on the normal pay schedule. If you are eligible for payment of any commissions or other payments under any sales incentive plan, you will be paid those commissions according to the terms of the applicable plan. Unless otherwise noted below, your pay and benefits will end as of the Employment Separation Date. |
| *2. Severance Benefits : Termination Allowance and Other Benefits* | If you sign this Agreement and do not revoke it, you will receive a lump sum cash Termination Allowance equal to two (2) weeks of salary for each year or partial year of applicable service, with a minimum of four weeks' salary, in accordance with the terms of the International Paper Company Salaried Employee Severance Plan (the "Severance Plan") as well as certain additional benefits that are described in Exhibits 1 and 2. |
| *3. Deductions from Termination Allowance* | IP will deduct from the Termination Allowance:<br>• any taxes and other amounts required by law; and<br>• unless prohibited by applicable law, any amounts you owe IP, including any wage or benefit overpayments and any unpaid loans. |
| ***4. Review Period*** | **You have up to 21 days to review and consider this Agreement and, if you agree with its terms, sign and return it. You may elect to sign this Agreement at any time during the 21 day period. At the end of that period, if you do not sign the Agreement, you will not be eligible** |

| | |
|---|---|
| | **for a Termination Allowance. By signing this Agreement, you agree that you will receive payments and benefits beyond that which you would receive if you did not sign the Agreement.** |
| ***5. Revocation Period*** | **You have seven (7) days after you sign this Agreement to revoke your acceptance. Written notice of your revocation must be received by Carmen Coleman, 6400 Poplar Avenue, Memphis, TN 38197 no later than seven (7) days after you sign the Agreement. If you revoke this Agreement within that 7-day period, the Agreement will no longer be in effect, and you will not receive the Termination Allowance.**<br><br>**If you reside in Minnesota, you have fifteen (15) days after you sign this Agreement to revoke your acceptance. Written notice of your revocation must be received by Carmen Coleman, 6400 Poplar Avenue, Memphis, TN 38197 no later than fifteen (15) days after you sign the Agreement.** |
| *6. Timing of the Termination Allowance* | You will receive your Termination Allowance as soon as practicable after the revocation period, described above. |
| *7. General Release of Claims – Including Claims Under the Age Discrimination in Employment Act* | By signing this Agreement, you release IP from any claim of any kind arising out of or related to your employment with IP, the termination of your employment, or any matter or event occurring up to the date you sign this Termination Agreement. You also agree that, except as provided in Paragraph 8 below, you will not file or be a party to any legal action, or claim against IP regarding these claims.<br><br>This is a General Release and covers all claims under federal, state or local law, whether based on statute or common law, that relate to employment, *including but not limited to,* all federal, state, and local discrimination laws, claims, charges, and legal actions under the following:<br>• Age Discrimination in Employment Act (which prohibits age discrimination in employment);<br>• Title VII of the Civil Rights Act of 1964, as amended (which prohibits harassment or discrimination in employment based on race, color, national origin, religion or sex);<br>• Equal Pay Act (which prohibits paying men and women unequal pay for equal work);<br>• Family and Medical Leave Act (which provides for unpaid leave for family or medical reasons);<br>• Americans with Disabilities Act (which prohibits discrimination based on disability);<br>• Genetic Information Nondiscrimination Act of 2008 (which prohibits use of genetic information to make decisions about health insurance and employment); |

| | |
|---|---|
| | • Worker Adjustment and Retraining Notification Act (which requires sixty days notice of employment termination in certain situations such as plant closing and mass lay-off);<br>• Employee Retirement Income Security Act of 1974 ("ERISA"), including any claims for breach of fiduciary duty under ERISA; and<br>• Any other federal, state or local laws, ordinances, or regulations prohibiting employment discrimination or regulating the terms and conditions of employment, (specifically including but not limited to the New Jersey Conscientious Employee Protection Act and the Minnesota Human Rights Act).<br><br>This General Release also includes a release and waiver of any claims for breach of express or implied contract, any claims, qui tam or anti-retaliation provisions under any federal, state or local statute or common law relating in any way to the employment relationship, and any right to any recovery of money or any other personal remedy. It applies both to claims that you know about and to claims you do not know about.<br><br>This General Release *does not* release or waive any claims you may have that arise after the date you sign this Agreement. It does not apply to worker's compensation or unemployment claims or any other claim to the extent that those claims cannot be released or waived according to applicable law. |
| ***8. Right to File a Charge and Cooperate with Government Agencies*** | Nothing in this Agreement prohibits you from filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or any other federal or state government agency or from participating in any investigation or proceeding conducted by a federal or state government agency. However, it does waive your right to bring a lawsuit on your own behalf and to recover for any damages for claims arising out of or relating to your employment with the Company or the termination of that employment.<br><br>Nothing in this Agreement prohibits you from making disclosures necessary for or required by your good faith participation in any lawful government investigation. |
| ***9. Special Provision with Respect to California Law*** | To give full effect to the General Release above, with respect to any claim arising under California law, you expressly waive any and all rights and benefits conferred upon you by the provisions of §1542 of the Civil Code of the State of California which states:<br>*"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her* |

| | |
|---|---|
| | *favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."* |
| *10. Entities Involved in this Agreement* | When used in this Agreement, the term "IP" means International Paper Company and any of its subsidiaries or affiliated entities, employee benefit plans and programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and the managers, directors, agents, employees, successors and assigns of any of them. |
| *11. Non-Admission* | IP does not admit that it has done anything wrong or violated any law or regulation. IP maintains that it has treated you in all respects in a lawful manner. |
| *12.No Further Payments or Entitlements* | You agree that, with the payment of the Severance Benefits described in Exhibits 1 and 2, you have received all payments and entitlements due to you from IP, including all wages earned (including any earned overtime), commissions, bonuses, incentives, sick pay, holiday pay, vacation pay, and any paid or unpaid leave. You agree that nothing else is due to you from IP. You agree that you have not been denied any leave rights pursuant to the Family and Medical Leave Act during your employment at IP.<br><br>You agree that, as of the date you signed this Agreement, all disputes you have with IP are resolved and this Agreement provides full relief regarding any matters related to your employment by IP. If a third party brings a claim or lawsuit against IP on your behalf, you agree that you will not accept any additional money or personal relief other than what is specified in this Agreement. |
| *13. No Re-Employment* | You agree that your employment relationship with IP is permanently terminated as of the Employment Separation Date above. You agree not to apply for or otherwise seek employment with IP in any capacity, including as a consultant or contractor. If you do seek or obtain such re-employment, you agree that this Agreement will be sufficient cause for IP to refuse to hire you or terminate your employment if you have already been hired. |
| *14. No Disparaging Remarks* | Except as otherwise provided in Paragraph 8 above, you will not make or publish, or cause to be made or published (including on-line), any derogatory or disparaging statements, remarks or writing about IP, IP's products, businesses, services, current or former officers, directors and employees. |
| *15. Inventions and Intellectual Property* | For the purposes of this Agreement, "Inventions or Intellectual Property" includes, but is not limited to, anything which can be protected by an intellectual property right, such as a trade secret, copyright, patent or trademark anywhere in the world. |

| | |
|---|---|
| | You agree and do hereby assign to IP all right, title and interest in any Inventions or Intellectual Property conceived of, created, reduced to practice or developed, in whole or in part, during your employment with IP, without additional compensation.<br><br>You acknowledge and agree that this Intellectual Property Section is not applicable unless the Inventions or Intellectual Property, at the time of conception, research, reduction to practice or development, (a) relates directly to IP's current business or actual or demonstrably anticipated business research or development; (b) uses IP's information, equipment, facilities, supplies or trade secret information; (c) is or was conceived of, created, reduced to practice or developed, in whole or part, while you were working on IP's time; or (d) results from your work for IP.<br><br>You have, or you will, promptly and fully disclose to IP all Inventions and any other Intellectual Property made or conceived by you during your employment with IP. You agree to execute any papers required by IP to protect the Intellectual Property and to establish IP's ownership, even if such cooperation is necessary after your Employment Separation Date. |
| ***16. Restrictive Agreements*** | For the purposes of this Agreement, "Confidential Information" includes, but is not limited to, any information possessed or owned by IP which is not generally known to the public (especially if such information gives IP a competitive advantage or its disclosure would harm IP), Inventions or Intellectual Property (defined above), trade secrets, proprietary information, and all other information documents or material owned, developed or possessed by IP or any employee or consultant of IP, whether tangible or intangible, relating in any way to IP's business and operations, research and development, customers, prospective customers, business plans, business relationships, products or processes, costs or profit information or date from which that information could be derived, human resources (including internal evaluations of the performance, capability, and potential of any IP employee), business methods, databases and computer programs.<br><br>If you signed an Employee Agreement Concerning Inventions, Intellectual Property, Confidential Information and Conflict of Interest ("Confidentiality Agreement"), your promises under that Confidentiality Agreement are still valid and enforceable. Even though you are no longer employed by IP, you still have legal obligations to IP with respect to Confidential Information you learned, conceived, or developed during your employment. Whether you have signed a Confidentiality Agreement or not, we remind you that you have an |

| | |
|---|---|
| | obligation under law not to disclose Confidential Information to third parties.<br><br>This Agreement also does not change any obligations you may have under any other agreements entered into with the Company relating to:<br>• Confidential Information,<br>• Non-Competition,<br>• Inventions or Intellectual Property, or<br>• other restrictive covenants.<br>Please contact IP Human Resources if you need another copy of your signed agreement(s).<br><br>By signing this Agreement, you agree that:<br>(1) except as otherwise provided in Paragraph 8 above, you will not publish, use or otherwise directly or indirectly disclose (except as directed by IP) any Confidential Information owned or possessed by IP or its employees;<br>(2) you understand that (a) IP considers Confidential Information to be commercially valuable and important to its success, (b) disclosure of Confidential Information would cause irreparable harm to IP, and (c) this restriction is reasonably necessary for the protection of IP's business; and<br>you will not use any Confidential Information for your own purposes or for the purposes of others, including but not limited to, in any future jobs or to create Inventions or Intellectual Property. |
| *<u>17. Injunctive Relief</u>* | There may be situations where monetary damages for a violation by you of this Agreement could not be calculated, and IP would not have an adequate remedy at law. In those cases, you agree that in the event of your violation, or the threat of your violation of this Agreement, IP will be entitled, in addition to any other legal remedies and damages available, to temporary and permanent injunctive relief (without the necessity of posting a bond) granted by a court of competent jurisdiction to restrain the violation or threatened violation of your obligation. |
| *<u>18. Return of Company Property</u>* | You agree that as of the date you signed this Agreement, you have returned to the Company any and all documents and property of the Company, (including without limitation any and all Confidential Information), you have not retained any copies (hard copy or electronic on any form of storage media) of such documents and property of the Company, and that you have provided your manager with all passwords to IP electronic communication and data systems. |

| | |
|---|---|
| *19. Full Disclosure* | You represent that you did not engage in any inappropriate, unethical, or illegal conduct in connection with your employment and that you have provided IP with any information you have regarding any potential or actual violations of law, regulation, or Company policy relating in any way to the business of the Company or conduct of its employees or agents.<br><br>You agree that you have reported all job-related illnesses and injuries that you experienced during your employment. |
| 20. *Agreement to Cooperate* | You agree to cooperate with IP and its lawyers (including if necessary preparation for and appearance at depositions, hearings, trials or other legal proceedings), with regard to any legal or regulatory matters that you have knowledge about or were involved in during your employment with IP. If your cooperation is required, IP will reimburse you for reasonable and necessary expenses in connection with anything you do at the request of IP or its lawyers. Nothing in this Paragraph limits your rights as set out in Paragraph 8 above. |
| *21. Resolution of Disputes* | If any dispute arises regarding this Agreement and/or benefits that you may be entitled to under the terms of the Severance Plan, the dispute will be resolved in the manner set out in the claim review procedure as provided in the Summary Plan Description of the International Paper Company Salaried Employee Severance Plan ("SPD"). If you need a copy of the SPD, you will receive one upon request. If a dispute regarding this Agreement arises that does not involve the Severance Plan, this Agreement will be construed under the laws of the State of Tennessee (without regard to its laws regarding conflict of laws). |
| *22. Severability* | If any court of competent jurisdiction should find that any portion of this Agreement is invalid, the invalidity of that portion will not affect the enforceability of any other portion of this Agreement. However, if the "General Release of Claims" is deemed void or unenforceable, you agree to execute a new release with no additional consideration or alternatively, IP may void the entire Agreement at its option. |
| *23. Employment References* | You agree to direct any reference requests from prospective employers to the IP Human Resources Department. If you or a prospective employer need employment verification, salary verification and/or eligibility for social service programs, IP has established an interactive phone and web-enabled program that will provide this verification directly to the prospective employer. More information on this system is available from your Human Resources Department. |
| 24. *No Reliance* | In deciding to sign this Agreement, you agree that you have not relied upon any statements or promises by IP, its managers, agents, or employees other than those set forth in this Agreement. |
| | |

| | |
|---|---|
| *<u>25. No Other Promises</u>* | You agree that IP has made no promises to you other than those in this Agreement and the Severance Plan. This Agreement and the terms of the Severance Plan constitute the entire agreement between you and IP. This Agreement may not be amended, modified, or supplemented except by a written agreement signed by both you and the Senior Vice President, Human Resources & Communication, or designee, that expressly amends, modifies, or supplements this Agreement. |
| ***<u>26. Consult with an Attorney</u>*** | **You are advised to consult with an attorney of your choosing before signing this Agreement. It is your decision whether or not to consult with an attorney and you will be responsible for paying any legal fees associated with your consideration of this Agreement.** |

To accept this Agreement, please date and sign this letter below and return it in the envelope provided. As explained above, if you do not revoke it during the 7-day day revocation period (15 days in Minnesota), it will become effective on the 8th day after the date you sign the Agreement (16th day in Minnesota).

FOR INTERNATIONAL PAPER COMPANY

Carmen F. Coleman
Signature

Carmen F. Coleman
Print Name

6/20/17
Date

901-419-8218
Telephone Number

---

By signing this Agreement, I agree that I have read the entire Agreement and Exhibits and understand their meaning. I also understand that this Agreement is a legal document, and by signing it I am giving up certain legal rights. IP has given me enough time to consult with my family, advisors and legal counsel and to consider whether I should agree to the terms of this Agreement. IP advised me to consult with an attorney and I had enough time to obtain independent counsel if I chose to do so. Finally, I acknowledge that I am voluntarily signing this Agreement.

Martha Castellon-Vogel
Employee Signature

Martha Castellon-Vogel
Print Name

7/21/17
Date



EXHIBIT B

POSTON SEIFRIED & SCHLOEMER
Attorneys at Law

2039 Dixie Highway
Ft. Mitchell, Kentucky 41011
Telephone: (859) 431-3200
Facsimile: (859) 655-7765
www.pss-law.net

James R. Poston, Jr. *
Kent W. Seifried *
Douglas B. Schloemer ◊

* Admitted in Kentucky & Ohio
◊ Admitted in Kentucky, Ohio & Indiana

Reply to
Kent@pss-law.net

July 12, 2017

Ms. Carmen F. Coleman
Human Resources Manager
EHS & Global Technology
International Paper
6400 Poplar Ave.
Memphis, TN 38197

**VIA E-MAIL:**
**Carmen.Coleman@ipaper.com**

**RE: Martha Castellon-Vogel**

Dear Ms. Coleman:

As we discussed, our office represents Ms. Martha Castellon-Vogel with regard to her employment at International Paper, and IP's proposed Termination Agreement and Release. We have had an opportunity to review these matters and, on Martha's behalf, set forth the following.

Martha contributed twenty-eight years of distinguished, productive, and profitable service to IP before being abruptly terminated on June 30, 2017. Unfortunately, during her long service Martha was subject to multiple, recorded occasions of unprofessional employment harassment and misconduct, including physical assault by a Senior Manager, because of her nationality, gender, and age. This pattern culminated this past Spring as part of IP's most recent managerial disruption and confusion. During her discussions with her manager, Martha inquired about an opportunity for promotion and asked why IP was promoting male employees in preference to middle-aged, minority women such as herself. Her inquiry was rebuffed and, shortly thereafter, IP terminated her employment.

Martha's termination rights are governed by IP's Salary Employee Severance Plan. IP has chosen to design and write its Plan to provide accrued, vested severance benefits to full-time, long-serving salaried employees and pension participants like Martha. These benefits include a termination allowance equal to two weeks of salary for each of Martha's twenty-eight years of service, and bridging to early retirement benefits.

Martha's eligibility for these severance benefits requires her to sign a termination agreement with conditions acceptable to IP; e.g., the nonre-employment, non-disparagement, return of property, and confidential information restrictions set forth in IP's proposed

Termination Agreement and Release. However, IP cannot condition Martha's entitlement to her termination allowance and bridging benefits upon her general release of employment claims under applicable Federal, State, or Local law. IP designed its Plan to invest Martha with her termination allowance and bridging benefits as an eligible participant under the Plan. As such, these benefits are due to her and are legally enforceable against the Plan. 29 USC § 1132(a)(1)(B). IP also cannot require Martha to release claims in exchange for benefits to which she is already entitled. See *e.g.* 29 USC § 626(f)(1)(D). Similarly, IP cannot use its "termination agreement acceptable to the Company" qualification to impose a general release agreement upon Martha. As the Courts have held, a severance benefit plan that contemplates an agreement "acceptable to the Company" does not allow the Company to condition an employee's benefits on any additional limits it wants to add at its discretion. *Pactiv Corp. v. Rupert*, 724 F.3d 999 (7th Cir. 2013).

Martha is willing to provide IP with a general release of her employment claims under all applicable Federal, State, Local laws in exchange for the following consideration. Martha's termination allowance under the proposed Termination Agreement and Release shall be increased from two weeks to four weeks of salary for each of her twenty-eight years-of-service, with all of her other rights and obligations thereunder remaining the same. This consideration of 2 additional "two weeks salary/service year" is the value that IP itself has placed on Martha's general release.

Please have the proposed Termination Agreement and Release changed to reflect this modification. Thereafter, please forward the revised Agreement to me for Martha's signature.

If you have any questions or comments, please let me know. Otherwise, I look forward to hearing from you.

Sincerely,

POSTON, SEIFRIED & SCHLOEMER

By:____________________
Kent W. Seifried

JRP:smb
cc: Ms. Martha Castellon-Vogel



EXHIBIT C

Kent Seifried <kentseifried@gmail.com>

---

## Martha Castellon-Vogel

1 message

---

**Kent Seifried** <kent@pss-law.net> Fri, Jul 21, 2017 at 2:18 PM
To: "Carmen F. Coleman" <carmen.coleman@ipaper.com>
Bcc: Martha Castellon Vogel <macv712@icloud.com>

Ms. Coleman--Our client, Martha Castellon-Vogel, has signed the Termination Agreement and Release, which is attached. Please have Martha's severance benefits processed and paid. As detailed in my July 12, 2017 letter to you, Martha reserves her rights, including to bring causes of action against IP for wrongful termination and discrimination, as receipt of her Plan severance benefits does not provide IP with a general release of any such employment claims.

If you have any questions or comments, please let me know. Otherwise, thank you for your attention to this matter.

Kent W. Seifried, Esq.
Poston, Seifried & Schloemer
2039 Dixie Highway
Ft. Mitchell, Kentucky 41011
(859) 431-3200 - Telephone
(859) 655-7765 - Facsimile
(877) 201-7274 - Toll Free

---

**Termination Agreement and Release.pdf**
172K


INTERNATIONAL PAPER

EXHIBIT D

**SARAH H. NORTON**
CHIEF COUNSEL
LABOR AND EMPLOYMENT

6400 POPLAR AVENUE
MEMPHIS, TN 38197

T 901-419-6870
F 901-214-9957
Sarah.Norton@ipaper.com

August 14, 2017

**VIA FEDEX**
Mr. Kent W. Seifried, Esq.
Poston, Seifried & Schloemer
2039 Dixie Highway
Ft. Mitchell, Kentucky 41011

RE: Martha Castellon-Vogel

Dear Kent:

This letter is to confirm that International Paper ("IP" or the "Company") has processed Ms. Castellon-Vogel's signed Termination Agreement and Release (the "Agreement") for payment. As you know, IP received Ms. Castellon-Vogel's signed Agreement on July 21, 2017, from you via email. And, IP did not receive a notice of revocation within the seven (7) day period as proscribed in paragraph 5, Revocation Period, from Ms. Castellon-Vogel. I want to clearly state IP's position that Ms. Castellon-Vogel's Agreement provides a valid release of claims. There is no obligation to provide severance benefits as a matter of law. Furthermore, the Company may condition eligibility for the Termination Allowance and the bridging benefit under the International Paper Company Salaried Employee Severance Plan (the "Plan") upon the participant's waiver of claims.

If you have any questions regarding the payment of Ms. Castellon-Vogel's severance benefits, please do not hesitate to contact me directly.

Sincerely yours,

Sarah H. Norton

Sarah H. Norton