UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARTHA A. CASTELLON-VOGEL,<br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL PAPER COMPANY,<br>Defendant. | Case No. 1:17-cv-00645<br>Dlott, J.<br>Litkovitz, M.J.<br><br>**REPORT AND**<br>**RECOMMENDATION** |

## I. Introduction

Plaintiff Martha A. Castellon-Vogel brings this action for declaratory judgment against her former employer, International Paper Company (IP). Plaintiff claims that the Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. § 2201 (Declaratory Judgments), and 29 U.S.C. §§ 1132(a), (e), (f), 1391(c) (Employee Retirement Income Security Act) (ERISA). (Doc. 1). Defendant filed an answer and, in the alternative, a counterclaim for declaratory judgment against plaintiff under 28 U.S.C. § 2201 and ERISA, 29 U.S.C. § 1132(a)(3), and other appropriate equitable relief under ERISA. (Doc. 4). This matter is before the Court on plaintiff's motion for judgment on the pleadings (Doc. 9), defendant's opposing memorandum (Doc. 15), and plaintiff's reply in support of her motion (Doc. 18), and on defendant's motion to strike improper material from the record under Fed. R. Civ. P. 12(f) and defendant's motion for judgment on the pleadings on its counterclaim (Docs. 16, 17) and supporting memorandum (Doc. 15), plaintiff's memorandum in opposition to defendant's motions (Docs. 18, 19, 20), and defendant's reply in support of its motions (Doc. 23).

## II. Allegations of the complaint

Plaintiff makes the following allegations in the complaint (Doc. 1): Plaintiff, a resident of Ohio, was employed by defendant IP, a New York corporation conducting business in Ohio, for 28 years as a full-time salaried employee. On June 30, 2017, IP eliminated plaintiff's job as a Senior Staff Engineer at its Loveland, Ohio facility. The job elimination constituted a "Termination Event" under the International Paper Company Salaried Employee Severance Plan ("Plan"). The Plan is a welfare plan[1] governed by ERISA which was established during plaintiff's employment to provide severance benefits for eligible employees.

IP required plaintiff to sign a Termination Agreement and Release ("Termination Agreement") in order to receive the "Termination Allowance" she was entitled to receive under the Plan. (*Id.*, Exh. A). IP represented that the Termination Agreement was "a termination agreement acceptable to the Company" under the terms of the ERISA plan. The "Termination Allowance" was a lump sum cash payment equal to two weeks salary for each year or partial year of service in accordance with the terms of the IP Plan, with certain additional benefits. (*Id.*, Exh. A, ¶ 2). Under the Plan, plaintiff had 21 days, which was until July 21, 2017, to sign the Termination Agreement and return it to IP.

The Termination Agreement contained a "General Release of Claims" provision at ¶ 7 ("General Release"). The General Release states, in part:

> By signing this Agreement, you release IP from any claim of any kind arising out of or related to your employment with IP, the termination of your employment, or any matter or event occurring up to the date you sign this Termination Agreement. You also agree that, except as provided in Paragraph 8 below, you will not file or be a party to any legal action, or claim against IP regarding these claims.

---

[1] 29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" and "welfare plan" as any "plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan . . . was established or is maintained for the purpose of providing for its participants or their beneficiaries" specified types of benefits.

2

> This is a General Release and covers all claims under federal, state or local law, whether based on statute or common law, that relate to employment, *including but not limited to*, all federal, state, and local discrimination laws, claims, charges, and legal actions under the following:
>
> - Age Discrimination in Employment Act [ADEA]. . .;
> - Title VII of the Civil Rights Act of 1964, as amended. . .;
>   . . . .
> - Any other federal, state or local laws, ordinances, or regulations prohibiting employment discrimination or regulating the terms and conditions of employment. . . .
>
> This General Release also includes a release and waiver of any claims for breach of express or implied contract, any claims . . . under any federal, state or local statute or common law relating in any way to the employment relationship, and any right to any recovery of money or any other personal remedy. It applies both to claims that you know about and to claims you do not know about.
>
> . . . .

(Doc. 1, Exh. A, ¶ 7).

The Plan itself does not contain express language that requires an eligible participant to sign a general release of employment-related claims to obtain severance benefits, and the Plan does not give notice that eligibility for a termination allowance is conditioned on a general release of employment-related claims.

Plaintiff, through her counsel, advised IP on July 12, 2017, that her eligibility for her termination allowance under the Plan could not be conditioned on the General Release. Plaintiff advised IP that she was already entitled to termination benefits under IP's Plan pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), and IP could not rely on Plan language requiring that termination benefits be paid under a "termination agreement acceptable to the Company" to condition receipt of benefits on a "non-Plan and unauthorized General Release, [imposed] without notice, and at IP's unfettered discretion. . . ." (Doc. 1, ¶ 11; Exh. B). Plaintiff

3

nonetheless signed and returned the Termination Agreement to IP on July 21, 2017. She informed IP that she "reserves her rights, including to bring causes of action against IP for wrongful termination and discrimination, as receipt of her Plan severance benefits does not provide IP with a general release of any such employment claims." (Doc. 1, ¶ 13, Exh. C). Plaintiff did not revoke her acceptance of her Termination Allowance within 7 days, or by July 28, 2017, as provided under the Plan.

IP denies that the Plan and Termination Agreement "do not and cannot impose an enforceable release of [plaintiff's] employment-related claims against IP." (Doc. 1, ¶ 16). IP has informed plaintiff that if she pursues legal remedies that she purportedly released under the Termination Agreement, IP will rely on the Termination Agreement to oppose such efforts and will seek to recover its costs, attorney fees and other sanctions against plaintiff.

On August 14, 2017, IP confirmed in writing that it had processed and would be paying plaintiff's Termination Allowance. (Doc. 1, Exh. D). IP reiterated its position that the Termination Agreement is a valid release of plaintiff's employment-related claims. (*Id.*). IP paid plaintiff's Termination Allowance under the Plan on August 31, 2017.

Based on these allegations, plaintiff brings a claim for declaratory judgment. Plaintiff alleges that an actual case or controversy exists between the parties as to the "validity, effectiveness, and enforceability of the provisions of the General Release," and a declaratory judgment in her favor would "settle the controversy, clarify the legal relations between the parties, and serve as an effective remedy." (Doc. 1, ¶¶ 24, 27). Plaintiff seeks a declaration that "the General Release of Claims in the Agreement is null and void, unenforceable against

[plaintiff], and does not otherwise bar her from pursuing her rights against [IP], including claims against it for wrongful termination and discrimination." (*Id.*, ¶ 26).

### III. Defendant IP's answer and counterclaim

In its answer and counterclaim, defendant denies that the Termination Agreement violates the Plan by conditioning the receipt of benefits on execution of the General Release. (Doc. 4). Defendant asserts, among other defenses, that there is no case or controversy between the parties as required under the Declaratory Judgment Act; in the alternative, that plaintiff has presented only a theoretical or hypothetical case or controversy over which the Court should decline to exercise its jurisdiction under the Act (*Id.*, ¶¶ 26, 27); and plaintiff has not pled any factual allegations or cited any specific statutory provisions that provide a basis for relief (*Id.*, ¶ 34).

If the Court finds there is a justiciable case or controversy, defendant pleads in the alternative and presents counterclaims based on the following allegations: IP established the Plan, which is an employee welfare benefit plan subject to ERISA, prior to 2017. Plaintiff was covered by the Plan and was eligible for benefits under the Plan, subject to its terms and conditions, when her employment ended. The Plan provides a "termination allowance for eligible employees," which eligible participants may obtain if their employment is terminated under specified circumstances provided the individual (1) works until a specified "job completion date," and (2) "sign[s] a termination agreement acceptable to the Company." (Doc. 4, ¶¶ 41, 42). Plaintiff was given "a copy of a termination agreement acceptable to the Company on or about June 20, 2017." After she consulted with legal counsel, plaintiff signed the Termination Agreement on July 21, 2017. Plaintiff did not revoke the Termination Agreement within seven days, and the Termination Allowance was paid to her on August 31,

5

2017. (*Id.*, ¶ 43). Plaintiff does not challenge the sufficiency or accuracy of the amount paid and has not attempted to repay the amount. Defendant therefore counterclaims against plaintiff for a declaratory judgment under 28 U.S.C. § 2201 and under ERISA, 29 U.S.C. § 1132(a)(3) that (1) "uphold[s] and declar[es] the enforceability of the termination agreement required by the Plan and acceptable to the Company," and (2) "enjoin[s] Plaintiff from filing any claim, complaint or taking any other action which she released and/or waived in the termination agreement." (*Id.*, ¶¶ 48, 49). Defendant also seeks its attorney fees and costs under 29 U.S.C. § 1132(g). (*Id.*, ¶ 49).

**IV. Motions for judgment on the pleadings**

Plaintiff moves for judgment on the pleadings. (Doc. 9). She asks the Court to enter an order (1) declaring the General Release in the Termination Agreement to be "null and void and otherwise unenforceable against her" and to "not bar her from pursuing her rights against [IP], including claims against it for wrongful termination and discrimination"; and (2) dismissing IP's counterclaim. (*Id.* at 1). Plaintiff argues that the parties' pleadings and attached exhibits present undisputed material facts and that the validity of the General Release is a question of law for the Court's determination. In response, defendant argues that there may be disputed issues of material fact based on the pleadings. In the event the Court disagrees and finds no issue of material fact, defendant moves for judgment on the pleadings in its favor on its counterclaims. (Doc. 17).

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a

motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted)). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**1. Plaintiff's request for relief under the Declaratory Judgment Act**

Plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which states:

> (a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.

The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). The Declaratory Judgment Act only provides a remedy for cases over which there is an independent basis of jurisdiction. *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 524 (6th Cir. 2000) (citing 28 U.S.C. § 2201(a)).

Federal courts' jurisdiction is limited by Article III of the Constitution, which restricts federal judicial power to the adjudication of "[c]ases" or "[c]ontroversies." *Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S.Ct. 1540, 1547 (2016)). The Declaratory Judgment Act's requirement of "a case of actual controversy" affirms the Constitutional case or controversy requirement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937); *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994) (the "case or controversy" jurisdictional requirement of Article III of the United States Constitution applies to declaratory judgment actions). There is no case or controversy if a plaintiff lacks standing to sue. *Duncan*, 885 F.3d at 427 (citing *Spokeo, Inc.*, 136 S.Ct. at 1547). *See also Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("Standing is essential to the exercise of jurisdiction and is a 'threshold question . . . [that] determin[es] the power of the court to entertain the suit.")). The plaintiff bears the burden of establishing standing and must show standing for each claim she wishes to pursue. *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)); *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581-82 (6th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). If the plaintiff fails to establish standing, the court must dismiss the complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 858 (6th Cir. 2017) (citing *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013)).

There are constitutional and statutory components to the court's standing inquiry. *Soehnlen*, 844 F.3d at 581-82. What courts have commonly referred to as "statutory standing"

actually refers to whether the plaintiff before the court "has a cause of action under the statute." *Id.* (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --U.S. --, 134 S.Ct. 1377, 1386 (2014) (clarifying that what courts have commonly referred to as "statutory standing" is not actually a matter of standing but simply a question of whether a particular plaintiff has a cause of action under the statute). Even if a plaintiff has a cause of action arising under a given statute, the Article III standing requirements must still be satisfied. *Id.* (ERISA claimants must show that Article III elements are satisfied) (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007) (citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 199 (2nd Cir. 2005)).

To satisfy Article III's standing requirements, plaintiff must show: "(1) [she] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 581 (citing *Loren*, 505 F.3d at 606-07) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)). An injury is particularized if it affects the plaintiff "in a personal and individual way." *Id.* at 581-82 (quoting *Spokeo*, 136 S.Ct. at 1548). Even where the plaintiff claims a statutory violation that is sufficiently particularized, she cannot show Article III standing unless she demonstrates that the deprivation of the statutory right "is accompanied by 'some concrete interest that is affected by the deprivation.'" *Id.* at 582 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

A "'concrete' intangible injury based on a statutory violation must constitute a 'risk of real harm' to the plaintiff." *Id.* (quoting *Summers*, 555 U.S. at 496).

Here, plaintiff brings her claim for declaratory relief under ERISA's civil enforcement provision, 29 U.S.C. 1132(a)(1)(B). A "participant" or "beneficiary" can bring an action under § 1132(a)(1)(B) to "recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan[.]" 29 U.S.C. 1132(a)(1)(B). A "participant" or "beneficiary" can seek "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer. . ., or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).[2] A "former employee" qualifies as a "participant" only if she has "a reasonable expectation of returning to covered employment" or she has "a colorable claim 'to vested benefits.'" *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) (citation omitted); *see also Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995) (citations omitted); *Sullivan v. Cap Gemini Ernst & Young U.S.*, 518 F. Supp.2d 983, 989 (N.D. Ohio 2007). A "colorable claim to vested benefits" is a colorable claim that an individual (1)

---

[2] The term "beneficiary" means "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Plaintiff does not allege she was a "beneficiary" of IP's Plan.

10

"will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Swinney,* 46 F.3d at 518 (quoting *Firestone,* 489 U.S. at 117-18).

As a general rule, a person who effectively terminates all their rights in a plan cannot be a "participant" in the plan. *Swinney,* 46 F.3d at 518. An employee ceases to be a participant in a plan when she "has accepted the payment of everything due" her under the plan in a lump sum and is owed no more benefits. *Id.* (citing *Teagardener v. Republic-Franklin Inc. Pension Plan,* 909 F.2d 947, 953 (6th Cir. 1990) ("the plaintiffs were no longer participants, since they received *all benefits* that they were due under the Plan *at the time their participation in the Plan terminated.*") (emphasis in the original)). An exception to the general rule applies if an employee gives up her right to benefits or fails to participate in the plan because of the employer's breach of fiduciary duty, in which case the employee can challenge that fiduciary breach. *Swinney,* 46 F.3d at 518 (collecting cases). "Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan." *Id.*

Plaintiff contends the Court has jurisdiction over this case because there is a "substantial controversy" before the Court as to the validity and enforceability of the General Release, and resolution of the parties' dispute will have an immediate impact on plaintiff's ability to bring state law claims for wrongful termination and discrimination against IP. (Doc. 9 at 8). Plaintiff claims she had a right to a Termination Allowance under the terms of an ERISA plan and that consistent with the terms of the Plan, IP could not validly require her to sign a General Release of claims as a condition of receiving those benefits. Defendant IP argues that plaintiff is foreclosed from pursuing her claim under ERISA because she validly executed the

Termination Agreement and accepted the Termination Allowance. (Docs. 15, 17). Defendant also contends there is no "real case or controversy before the Court" because plaintiff has not filed a charge of discrimination against IP to date; therefore, the claim she brings here is only hypothetical. (Doc. 15 at 7-8, citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 325 (1936) ("By its terms, [the Declaratory Judgment Act] applies to 'cases of actual controversy,' a phrase which must be taken to connote a controversy of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.")).

The Court finds that the complaint must be dismissed because plaintiff's claim does not satisfy the "actual controversy" requirement of the Declaratory Judgment Act. Plaintiff is not a "participant" in the IP Plan who brings this action for declaratory relief to recover benefits due her under the terms of the IP Plan, to enforce her rights under the terms of the Plan, or to clarify her rights to future benefits under the terms of the Plan. *See* 29 U.S.C. § 1132. Plaintiff is a former employee of IP. She does not have a reasonable expectation of returning to covered employment with IP. Plaintiff agreed when she signed the Termination Agreement that her employment relationship with IP was "permanently terminated" as of that date, and she agreed "not to apply for or otherwise seek employment with [IP] in any capacity" in the future. (*See* Doc. 1, Exh. A, ¶ 13: "No Re-Employment"). Nor does plaintiff have a colorable claim to vested benefits. Plaintiff signed the Termination Agreement and accepted the payment of her lump sum Termination Allowance for which she was eligible under the Plan. Plaintiff does not allege the amount of benefits she was paid was incorrect or claim that she is entitled to receive additional benefits under the Plan. Even if plaintiff is correct that the General Release does not bar her discrimination and other wrongful termination claims, she does not have a reasonable

claim for ERISA benefits. Plaintiff therefore does not meet the definition of "participant" under 29 U.S.C. § 1002(7), and she has not stated a cause of action under ERISA. *See Firestone Tire and Rubber Co.,* 489 U.S. at 117-18; *see also Teagardener,* 909 F.2d at 952 (the plaintiffs were not "participants" because they had accepted the payment of everything due them at the time their participation in the plan terminated and they were not due any more benefits); *Joseph v. New Orleans Electrical Pension & Retirement Plan,* 754 F.2d 628, 630 (5th Cir. 1985) (cited in *Teagardener,* 909 F.2d at 952) (retirees who had accepted the payment of everything due them under an ERISA plan in a lump sum were not "participants" because they had already received the full extent of their benefits and were no longer eligible to receive future payments); *cf. Sullivan,* 518 F. Supp.2d at 989-90 (former employee presented a colorable claim that the waiver she signed did not bar her ERISA claim because if the plaintiff's position was correct, she had a reasonable claim that she would prevail in a suit for benefits).

Further, plaintiff does not allege a breach of fiduciary duty by IP that caused her to forfeit her right to ERISA benefits under the IP Plan or to fail to participate in the Plan. *See Swinney,* 46 F.3d at 518. Plaintiff alleges that defendant IP fully disclosed the General Release to her before she signed the Termination Agreement; she was advised to consult with an attorney before she signed the Termination Agreement and was given several weeks to do so and consider whether to accept the terms of the Agreement; plaintiff was aware of the consequences of the General Release before she signed the Termination Agreement; plaintiff, through her attorney, reserved her right to bring causes of action against IP for wrongful termination and discrimination (Doc. 1, ¶ 13; Exh. C); plaintiff signed the Termination Agreement, which included the General Release, after obtaining the advice of counsel; and she accepted the

Termination Allowance she was due under the terms of the Plan. Plaintiff does not allege that IP misled her at any of these steps, that IP misrepresented the terms of the Termination Agreement and General Release that it presented to plaintiff for her signature, or that she did not receive all of the benefits that were owed her under the IP Plan.

Thus, even if the Termination Agreement ang General Release plaintiff signed were not consistent with the terms of the IP Plan, the complaint fails to state a cause of action under ERISA against IP. Plaintiff does meet the definition of "participant" under ERISA. The statutory component of the "actual controversy" requirement is not satisfied here. *See* 28 U.S.C. § 2201. The Court does not have authority to issue a declaratory judgment under 28 U.S.C. § 2201 for a violation of plaintiff's rights under ERISA.

Assuming, *arguendo*, that the complaint could be construed as presenting a cause of action under ERISA so as to satisfy the statutory component of the "actual controversy" requirement, plaintiff must show that the constitutional component is also satisfied. Plaintiff alleges the complaint presents a "case-in-controversy" because the "issue" presented by the complaint is "concrete." (Doc. 9 at 7). Plaintiff alleges that resolution of the issue will have an immediate impact on her ability to pursue her state law claims for wrongful discrimination and termination against IP. (*Id.* at 7-8). Defendant contends that plaintiff's injury is not concrete or imminent because plaintiff has not brought a discrimination charge against IP to date. (Doc. 15). Plaintiff argues in response that a "declaratory judgment may 'be used to obtain advanced rulings on matters that would be addressed in a future case of actual controversy.'" (Doc. 18 at 4, citing *MedImmune,* 549 U.S. at 127).

Plaintiff has not shown that inclusion of the General Release in the Termination Agreement has caused her to suffer "(1) . . . an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of [IP]; and (3) . . . the injury [likely] will be redressed by a favorable decision" in this lawsuit. *Soehnlen*, 844 F.3d at 581. First, plaintiff does not allege that she suffered an actual injury as a result IP's inclusion of the General Release in the Termination Agreement. Plaintiff received the full Termination Allowance to which she was entitled under the Plan. Plaintiff does not claim that she was denied benefits as a result of signing the Termination Agreement and she does not allege that she will suffer a loss of future benefits. Rather, the only injury she claims is the release of rights that she agreed to in exchange for the benefits she received. She claims she has been injured because she will be precluded from pursuing discrimination and wrongful termination claims that are covered by the General Release but which she intends to file in state court at a future date. The claimed injury is only conjectural at this point. For plaintiff's injury to materialize, two things must occur. First, plaintiff must file a claim that is encompassed by the General Release. Second, IP must raise the General Release as a defense to plaintiff's claim. Given the contingent nature of plaintiff's claim, "the facts alleged, under all the circumstances, [do not] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). Plaintiff has not established "an actual controversy" as required for the Court to exercise

complaint under the Declaratory Judgment Act. This Court lacks subject matter jurisdiction over plaintiff's complaint.

### 2. Defendant's motion to strike

Defendant moves to strike text in plaintiff's answer and exhibits that refer to settlement negotiations between the parties under Fed. R. Civ. P. 12(f). (Doc. 16). Defendant argues that plaintiff is barred under Fed. R. Evid. 408(a) from introducing evidence of "compromise" or settlement negotiations to prove she has presented a valid claim in the complaint. Plaintiff asserts in response that evidence of settlement negotiations is admissible to show that a case or controversy exists as opposed to demonstrating the validity of a claim. (Doc. 18 at 2-3).

Rule 408 provides that certain evidence, including evidence of "compromise" or settlement offers and negotiations, is not admissible "to prove or disprove the validity . . . of a disputed claim." Fed. R. Evid. 408. Evidence related to settlement offers or negotiations that plaintiff has submitted to show she has a justiciable claim are not properly considered in resolving this issue. The Court has therefore disregarded any references to settlement communications and documentation of settlement discussions submitted by plaintiff.

**IT IS THEREFORE RECOMMENDED THAT:**

1. This case be **DISMISSED** for lack of subject matter jurisdiction and terminated on the docket of the Court.

2. Plaintiff's motion for judgment on the pleadings (Doc. 9) be **DENIED** as moot.

3. Defendant's motion to strike (16) and motion for judgment on the pleadings on its counterclaims (Doc. 17) be **DENIED** as moot.

Date: 7/18/18

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARTHA A. CASTELLON-VOGEL,
Plaintiff,

vs.

INTERNATIONAL PAPER COMPANY,
Defendant.

Case No. 1:17-cv-00645
Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).